<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN BUSINESS LENDING GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br><br> AARON P. SHAINIS, ESQ. and SHAINIS & PELTZMAN, CHARTERED, a law firm, <br><br><br><br> Defendants. | Civil Action No. 10-cv-02420 (SDW) <br><br><br><br><br> **OPINION** <br><br><br><br><br><br> February 14, 2011 |

Before the Court is the defendants Shainis & Peltzman, Chartered ("Shainis & Peltzman") and Aaron P. Shainis, Esq. ("Mr. Shainis") (collectively "Defendants" or "Shainis-defendants") motion to dismiss plaintiff American Business Lending Group, Inc.'s ("ABLE Group" or "Plaintiff") Verified Second Amended Complaint in lieu of an answer pursuant to Federal Rule of Civil procedure 12(b)(2) ("Motion").

The Court, having considered the parties' submissions, and having heard oral argument on February 9, 2011, issues this opinion. For the reasons discussed below, the Court grants Defendants' Motion.

1

**Background and Procedural History**

Plaintiff ABLE Group is a Delaware corporation with its principle place of business in Morris County, New Jersey. (Am. Compl. ¶ 2.) ABLE Group is owned and controlled by Seth Bershadsky, who is a resident of New Jersey. (*Id.*) ABLE Group filed a legal malpractice and negligence action against Defendants, claiming that "[a]s a direct and proximate result of the Defendants' acts and omissions, ABLE Group suffered injury and damages." (Am. Compl. ¶ 33; Def.'s Br. 1.)

Defendants represent C. Elvin Feltner ("Feltner") and Television Capital Corporation ("TCC") in connection with its sale of assets and with matters pending before the Federal Communications Commissions ("FCC"). Defendants represented TCC in sale of interests in TCC of Gainesville (located in Florida) and TCC of Mobile (located in Alabama).[1]

In 2005, TCC and its principle were named as defendants in an action brought by Plaintiff in Superior Court in Morris County ("New Jersey Litigation").[2] Following numerous adjournments in the action, on May 5, 2008, the New Jersey Superior Court entered restraints against Feltner, TCC Mobile and their agents from "dissipating or encumbering their assets." (Am. Compl. ¶¶ 13-14.) The proceeds from the sale of certain TCC entities were to be transferred to an attorney trust account that was managed by Defendants. (Am. Compl. ¶¶ 14-

---

[1] Defendants currently represent TCC in connection with matters before the [FCC] relating to [TCC] of Lexington, [TCC] of Portland, and [TCC] of Richmond." (Cert. of Mr. Shainis ¶ 17.) These entities are applying for television facilities in Lexington, Kentucky, Portland, Oregon and Richmond, Virginia. (*Id.*; Def.'s Br. 5.)

[2] *American Business Lending Group, Inc., v. Television Capital Corporation of Mobile Inc., and C. Elvin Feltner*, Docket No. MRS-L-3512-05 in the Superior Court of New Jersey in Morris County (hereafter the "New Jersey Litigation"). (Am. Compl. ¶ 6.)

15.) Defendants held funds exceeding $2.0 million in trust in connection with the pending action involving TCC Mobile in the New Jersey Litigation. (Pl.'s Br. 2; Am. Compl. ¶¶ 6(b), 17.)

Plaintiff states that Defendants exchanged emails with ABLE Group's counsel-of-record in the New Jersey Litigation related to the settlement, sent and received letters in connection with the representation of TCC Mobile, and engaged in "telephonic communications with the ABLE Group's counsel-of-record and others involved in the New Jersey Litigation as participants on behalf of Feltner and [TCC Mobile], but without making an appearance as counsel-of-record in the New Jersey Litigation." (Am. Compl. ¶ 6(g)-(i).) Specifically, there are two documents that Plaintiff claims Defendants were involved in drafting and negotiating between ABLE Group and other parties in the New Jersey Litigation: the "Agreement for the Distribution of Proceeds" and the "Creditor Group Settlement Agreement." (Pl.'s Br. 2, 7; Am. Compl. ¶ 6(f).) According to these documents, both dated August 8, 2008, funds were to be distributed to a group of eight creditors with claims against Feltner and TCC entities, including ABLE Group ("Creditor Group").[3]

Pursuant to the Feltner Settlement Agreement, also dated August 8, 2008, ABLE Group had a first priority claim and security interest in "all monies and property of the [TCC] entities," and according to Plaintiff, "including the funds being held in the Defendants' attorney trust account." (Am. Compl. ¶¶ 21, 23; Ex. B, Feltner Settlement Agreement ¶ 2.) The Feltner Settlement Agreement also provided that ABLE Group was to be paid $100,000 for claims against Feltner and/or TCC Mobile "upon the first occurrence of either of the following two

---

[3] Schedule A to the Creditor Group Settlement Agreement notes six claimants, including ABLE Group. (Am. Compl. Ex. D at 5.)    The Agreement for the Distribution of Proceeds provides for the distribution of funds to eight entities and individuals. (Am. Compl., Ex. C at 1-2.)

3

events: (i) the date upon which there is a sale, transference and/or encumbrance of any other [FCC] Construction Permit in which [TCC Mobile] has any claim of right and/or ownership interest . . . . ; or (ii) July 28, 2009. . . ." (Am. Compl., ¶ 16; *Id.*, Ex. B, Feltner Settlement Agreement ¶ 2.)[4]

The Creditor Group Settlement Agreement was amended on August 12, 2008 to include the following language to modify footnote 5 on page 2 of the Creditor Group Settlement Agreement:[5]  "ABLE, by separate written agreement dated August 8, 2008, shall be paid $300,000 now and the balance of $100,000 (plus 12% interest) on or before July 29, 2009." (Am. Compl., Ex. E.)

ABLE Group requested payment as of July 29, 2009. (Am. Compl., ¶ 26.) Sometime thereafter, Defendants advised ABLE Group that funds were not available in the attorney trust account to pay ABLE Group at that time. (*Id.* at ¶ 27.) On August 18, 2009, defendant Shainis & Peltzman was ordered to provide an accounting of its attorney trust account disbursements. (*Id.* at ¶ 28.) On October 5, 2009, upon an Order to Show Cause filed by ABLE Group and third party defendant Seth Bershadsky, the Superior Court entered an order for a judgment of $100,000 plus interest at 12% per annum against TCC and Feltner jointly and severally. (Am. Compl., Ex. F.)

---

[4] According to the Feltner Settlement Agreement, $400,000 plus interest was due to the ABLE Group, of which $300,000 was disbursed to Plaintiff from the proceeds of the sale of TCC Gainesville and TCC Mobile. (Def.'s Br. 10, 12.) The sales of TCC Lexington, TCC Portland, and TCC Richmond did not take place and additional funds have not been deposited into Defendants' attorney trust account. (*Id.* at 12.)

[5] Footnote 5 on page 2 of the Credit Group Settlement Agreement, dated August 8, 2008, referred to funds owed to ABLE Group and their security interest.

Plaintiff claims that in connection with the New Jersey Litigation, Defendants made unauthorized disbursements of $98,456.26, including $7,401.10 to Defendants themselves, $81,055.16 to Feltner ("although the parties' agreements made no provision for any funds to be paid to Feltner") and $80,000 to Bruce Fox (although Mr. Fox was allegedly only entitled to $70,000) from the trust account.  (Am. Compl. ¶¶ 22-23, 28.)  Plaintiff also claims that in addition to email and telephone communications, Defendants also prepared accounting records and a declaration for submission to the New Jersey Superior Court. (Am. Compl. ¶ 6(d)-(e); Pl.'s Opp'n 1.)

On May 11, 2010, Plaintiff filed its initial Complaint against Defendants in this Court. On July 5, 2010, Plaintiff submitted the first Verified Amended Complaint.  On July 28, 2010, Plaintiff filed a Verified Second Amended Complaint ("Amended Complaint").  On August 12, 2010, Defendants submitted their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction, in lieu of an answer.

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 4(e), federal "district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits." *See Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 31 (3d Cir. 1993).  New Jersey's long arm statute provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment to the United States Constitution.  *See* N.J. Ct. R. 4:4-4; *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992); *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981).  The question of whether this

5

Court has jurisdiction over the defendant is determined by federal constitutional law.  *See Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990).

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235 (1958)).  It is the burden of the plaintiff to prove that the defendant has purposefully availed himself of the forum state.  *See Burke v. Quartey*, 969 F. Supp. 921, 924 (D.N.J. 1997).

To prove that the defendant has purposefully availed itself of that state, a plaintiff may rely upon a defendant's specific contacts with the forum state.  When a claim is related to or arises of out the defendant's contacts with the forum, personal jurisdiction pursuant to such contacts is referred to as specific jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Dollar Sav. Bank v. First Security Bank of Utah*, 746 F.2d 208, 211 (3d Cir. 1984).

To satisfy specific jurisdiction, a court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted).  What constitutes minimum contacts varies with the "quality and nature of defendant's activity."  *Hanson*, 357 U.S. at 253. In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum and the litigation." *Keeton v. Hustler*, 465 U.S. 770 (1984).  There must be at least "a single deliberate contact" with the forum state that relates to the cause of action.

*United States Golf Ass'n v. United States Amateur Golf Ass'n*, 690 F. Supp. 317, 320 (D.N.J. 1988). The unilateral acts of the plaintiff, however, will not amount to minimum contacts. *Helicopteros*, 466 U.S. at 414; *Hanson*, 357 U.S. at 253.

Second, assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. 462, 476 (1985) (quoting *Int'l. Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *Pennzoil Products Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 201 (3d Cir. 1998). Although this second inquiry need only be applied at a court's discretion, *see Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1222 (3d Cir. 1992) (citing *Burger King Corp.*, 471 U.S. at 476-77), courts have generally chosen to engage in this second tier of analysis in determining questions of personal jurisdiction. *See, e.g., Mesalic v. Fiberfloat Corporation*, 897 F.2d 696, 701-02 (3d Cir. 1990) (considering notions of "fair play and substantial justice" in deciding issue of personal jurisdiction). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. *See World-Wide Volkswagen Corp.*, 444 U.S. at 292. To determine reasonableness, a court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies. *Id.* Only in "rare cases [do the] minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." *Asahi Metal Industry Co.. v. Super. Ct. of Cal.*, 480 U.S. 102, 116 (1987) (quoting *Burger King Corp.*, 471 U.S. 462, 477-78).

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic contacts" with the forum state. *Helicopteros*, 466 U.S. at 416. To establish general jurisdiction, the plaintiff must show significantly more than mere minimum contacts with the forum state. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive." *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982).

The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiffs. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 and n.9 (3d Cir. 1984). *See also Stranahan Gear Co. v. NL Industries, Inc.*, 800 F.2d 53, 58 (3d Cir. 1986) (cursory allegation reiterated in a sworn affidavit is insufficient to satisfy the plaintiff's burden of proof). The plaintiff need only make a prima facie showing of jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Farino*, 960 F.2d at 1223. In reviewing a motion to dismiss, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir. 1992).

**Discussion**

Defendants argue that there are not the requisite minimum contacts with the State of New Jersey to sustain personal jurisdiction over Defendants. Defendant Mr. Shainis is a Maryland resident admitted to practice law in the District of Columbia. (Def.'s Br. 4; Cert. of Mr. Shainis ¶ 3.) Defendant Shainis & Peltzman is a law firm organized under the laws of the

District of Columbia and maintains its office and principle place of business in Washington D.C.[6] (Def.'s Br. 4.)

Defendants' firm has not advertised within the State of New Jersey, conducted business or owned real or personal property in New Jersey. "The Firm never represented a New Jersey resident or New Jersey corporation. Moreover, the Firm never represented a client in New Jersey." (Def.'s Br. 4)(internal citations omitted). Defendants contend that an attorney-client relationship did not exist between Plaintiff and Defendants. (*Id.* at 1.) "Rather, in written agreements entered into by Plaintiff, Plaintiff's adversary and various other creditors of Plaintiff's adversary, the Shainis-defendants were designated to hold certain funds in their trust account and to distribute such funds in accordance with the terms of the aforementioned agreements." (*Id.*) Notably, the Agreement for the Disposition of Proceeds and the Settlement Agreement for the Creditor Group (both dated August 8, 2008) are both governed by the laws of the District of Columbia. (Am. Compl., Ex. C & D; Def.'s Br. 9-10.)[7] These are the two main agreements at issue in this matter.

Defendants claim they had limited contact with Plaintiff. This contact was specifically related to a TCC matter before the FCC in Washington, D.C. Defendants filed an application with the FCC in connection with the sale of TCC Gainesville. Plaintiff filed a Petition Against Sale. (Def.'s Br. 5.) Defendants, on behalf of TCC, filed opposition to the Petition Against Sale and served a copy on Plaintiff. (*Id.*) Defendants claim they had "no other contacts with Plaintiff in connection with the FCC matter or any other matters relating to the Firm's representation of

---

[6] Mr. Shainis is a founding principal of Shainis & Peltzman. (Cert. of Mr. Shainis ¶ 1.)

[7] However, the Feltner Settlement Agreement is governed by the laws of the State of New Jersey. (Am. Compl., Ex. B, Feltner Settlement Agreement ¶ 6.) Eugenio Genise, TCC's New Jersey counsel, worked on this settlement in New Jersey. (*See id.*, Ex. B.; Def.'s Br. 6.)

9

[TCC] in the sale of its assets and its application for television facilities." (*Id.* at 5-6.) Defendants claim that they acted as a "third-party escrow agent" and "transactional counsel for [TCC]" in connection to the settlement and sale of assets. (*Id.* at 2.) Further, TCC was represented by Eugenio Genise in the New Jersey Litigation, not Defendants. (*Id.* at 6.)

According to Defendants, "[t]he only tie to the State of New Jersey is that Plaintiff maintains its principle office in New Jersey and is owned by a resident of New Jersey." (Def.'s Br. 2.) Plaintiff disagrees and puts forth examples to the contrary. Plaintiff argues that there is personal jurisdiction over the Defendants based upon Defendants representation of Feltner and TCC Mobile with regard to the settlement of the claims that ABLE Group brought in the New Jersey Litigation. (Pl.'s Opp'n Br. 1-2.) Further, Plaintiff asserts that "[a]n out-of-state attorney voluntarily involved himself in a litigation which was pending in the Law Division of the Superior Court of New Jersey. . . . He represented the defendants of the New Jersey litigation, by negotiating and drafting key settlement documents to resolve the New Jersey dispute." (*Id.* at 1.) Plaintiff also claims that Mr. Shainis appeared as a witness for the defendants by "submitting a written accounting of the disputed disbursements, and a 'declaration' to the court, advocating on behalf of the New Jersey defendants, which are admittedly his clients." (*Id.*) Plaintiff argues that Mr. Shainis had a fiduciary duty to Plaintiff regarding the New Jersey matter and "volunteered" to receive funds in his law firm's trust account and "disburse it pursuant to a court order and the express terms of the settlement documents." (*Id.*)

Defendants claim that TCC was represented by other counsel in the New Jersey Litigation and that the "Shainis-defendants had no involvement in the New Jersey Litigation or the settlement of that Litigation." (Def.'s Br. 6.) Defendants also claim that they "did not participate in the negotiation of the global settlement or the terms of the written agreements."

10

(*Id.* at 8.) Defendants state that Vincent Pepper ("Mr. Pepper), consultant and communications attorney for TCC, requested assistance preparing the written agreements and the initial drafts because Mr. Pepper did not have staff available, and that he provided Defendants with the specific terms to be included in the agreements. (*Id.*)

Plaintiff points to certain activities performed by Defendants to support their position that Defendants had sufficient contacts with New Jersey to establish jurisdiction. For example, Defendants prepared the "written accounting for submission to the New Jersey Superior Court" in response to an Order. (Am. Compl. ¶¶ 6(d)-(e).) Defendants claim this accounting document, submitted by Mr. Genise was "simply the trust account ledger of disbursements relating to the global settlement that was maintained by the Shainis-defendants." (Def.'s Reply 2.) The declaration accompanied these records and provided a status update on a pending FCC application relevant to the global settlement. (*Id.*) Defendants claim all of these contacts were "ancillary and incidental" to work for their client on the global settlement. (*Id.* at 4.)

While the Defendants note that they "were not named in and did not have any duties or obligations with regard to the settlement of the New Jersey Litigation," Plaintiff claims that Defendants acted on behalf of their clients in New Jersey. (Def.'s Br. 6, Pl.'s Opp'n 1.) Plaintiff claims that the Defendants "appeared as a witness for the defendants [Feltner and TCC] by submitting a written accounting of the disputed disbursements, and a 'declaration' to the court, advocating on behalf of the [Superior Court] New Jersey defendants, which are admittedly [Mr. Shainis'] clients." (Pl.'s Opp'n 1; Am. Compl. ¶ 6(d)-(e).) As previously discussed, Plaintiff also claims that Defendants exchanged emails with ABLE Group's counsel-of-record in the New Jersey Litigation, sent and received letters in connection with the representation of TCC Mobile,

11

and engaged in telephone communications with ABLE Group's counsel-of-record and others involved in the New Jersey Litigation. (Am. Compl. ¶ 6(g)-(i).)

Plaintiff claims that "Defendants knowingly and willfully released monies from the subject attorney trust account, including monies which Defendants paid to themselves, in direct violation of the court order and agreements, and in material breach of their duty to Plaintiff, causing Plaintiff injury and resulting damages." (Am. Compl. ¶ 1.) Plaintiff also asserts that "Defendants voluntarily assumed a fiduciary duty to ABLE Group" in the action pending in the New Jersey Superior Court when Defendants agreed to hold funds in their attorney trust account and disburse the funds. (Am. Compl. ¶ 6(a).) According to Plaintiff, Defendants then "tortiously disbursed, released, and took attorney trust account funds, in breach of their fiduciary duty to ABLE Group." (Am. Compl. ¶ 6(c).)

Plaintiff argues that the New Jersey Appellate Division has held that "[a] person who commits a tort arising out of a business dispute with a New Jersey resident and has some contacts with New Jersey in connection with that business transaction should reasonably anticipate being sued in New Jersey. . . ." *Halak v. Scovill*, 296 N.J. Super. 363, 370 (App. Div. 1997). Further, "[j]urisdiction in the forum state may also be based on the effects in the forum state of a non-resident's actions." *Id.* Plaintiff also cites to *Wolpert v. North Shore University Hosp.*, 231 N.J. Super. 378 (App. Div. 1989), another case from the Appellant Division, as an example of an out-of-state professional being subject to specific jurisdiction in New Jersey. However, that case is distinguishable from the present matter, as it dealt with health care professionals in another state issuing reports related to sexual abuse claims who, "intending that [reports] will be the basis for action in another state," the court noted "should realize that liability can follow in the courts of that state." *Wolpert,* 231 N.J. Super. at 381. In the instant matter,

12

Defendants' filings in the New Jersey Litigation are not the basis for the present action. The documents submitted to the New Jersey Superior Court by the Defendants "were produced at the direction of the Court and were simply presented to the Court for the purpose of evidencing the moneys received and disbursed from the Shainis-defendants' attorney-trust account as a result of the sale of certain assets. . . ." (Def.'s Reply Br. 6-7.)

Even accepting all of Plaintiff's allegations as true and taken together, it has not been shown that there are the minimum contacts between the Defendants and New Jersey to maintain personal jurisdiction over the Defendants. First, "[c]ontracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant." *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F. 2d 551, 557 (citations omitted). The contract or agreement that is the focus of this matter is between Defendants' clients and numerous parties, including Plaintiff. Plaintiff was not Defendants' client and an attorney-client relationship did not exist between them. Even if Plaintiff was owed a duty by Defendants, Plaintiff has not shown that those duties arose as a result of actions in New Jersey as opposed to Defendants' disbursement of funds outside of New Jersey.

Second, to establish that this Court has specific jurisdiction, Plaintiff must point to "contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of tortious activity." *IMO Indus., Inc., v. Kiekert AG*, 155 F.3d 254, 265 (1998)(emphasis in original). While Plaintiff has noted telephone communications and communication by writing between Defendants and the parties in New Jersey, the main contact Defendants have with New Jersey is their role in distributing funds related to the New Jersey Litigation as part of a global settlement. Defendants' attorney trust account is not maintained in New Jersey; the account is located in Washington D.C. (Cert. of

Shainis ¶ 38.) In the *Carteret Savings Bank* case, a case involving an attorney's fraudulent misrepresentation with respect to a loan for a construction project, the court finding personal jurisdiction, pointed out that plaintiff alleged that defendant attorney's act of fraud took place in New Jersey. 954 F.2d at 142 (finding that fraudulent misrepresentation of attorney present at meeting in New Jersey was sufficient to confer personal jurisdiction pursuant to the New Jersey long-arm statute). *Carteret Savings Bank* is different than the instant matter, in which the alleged tort took place when that money was transferred out of the trust account and was distributed to parties that Plaintiff claims should not have been paid, including the Defendants themselves who are in Maryland and the District of Columbia. *See id.*

Plaintiff claims that Defendants participated in the actual drafting of the settlement agreements, but at no time indicates that Defendants were ever physically present in New Jersey at the time of the negotiations.[8] Plaintiff points to documents Defendants submitted to the New Jersey Superior Court, but Defendants role in the New Jersey Superior Court case appears to be limited and focus on the sale and distribution of funds of TCC assets in multiple states. *See Reliance Steel Prod. Co. v. Watson, et als.*, 675 F.2d 587, 588 (3d 1982) ("the initial determination that must be made is whether the claim or cause of action which is being pursued arises from the defendant's forum related activities or from non-forum related activities"); *see also Fiscus v. Combus Finance AG*, 2004 U.S. Dist. LEXIS 29844 (D.N.J. July 22, 2004). While Defendants' activities show some contact with the forum, Defendants were not counsel of record in the case or admitted pro hac vice, and their actions do not demonstrate purposeful availment.

---

[8] While lack of physical presence in New Jersey alone is not a bar to the exercise of personal jurisdiction, it is plaintiff's burden to establish the contacts are sufficient. *Farino*, 960 F.2d at 1223.

Plaintiff has not demonstrated that the Defendant purposefully availed itself to the State of New Jersey and has not established that Defendant had the minimum contacts necessary to be subject to specific jurisdiction in New Jersey. The Court need not decide whether the exercise of personal jurisdiction would meet the second requirement to form the basis of the Court's jurisdiction by comporting with fair play and substantial justice.[9] In addition, Plaintiff's request at oral argument that the Court consider allowing jurisdictional discovery will be denied as Plaintiff has not demonstrated a basis. As such, the Court will grant Defendants' Motion and dismiss based on the lack of specific jurisdiction.

## CONCLUSION

For the reasons discussed in this Opinion, this Court grants Defendants' Motion to Dismiss.

s/ Susan D. Wigenton, U.S.D.J.

cc: Clerk
Magistrate Judge Arleo
Parties

---

[9] Plaintiff does not claim there is a basis for general jurisdiction and appears to waive this argument. (*See* Pl.'s Opp'n; Def.'s Reply 1, 4.) Even if Plaintiff has not waived the argument for general jurisdiction, Plaintiff has not demonstrated that Defendants maintained "continuous and systematic contacts" with the State of New Jersey to satisfy the requirements for general jurisdiction. *See Helicopteros*, 466 U.S. at 416; *Provident Nat'l Bank*, 819 F.2d at 437.